******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# DAWN TEODORO *v.* CITY OF BRISTOL ET AL.
## (AC 39185)

DiPentima, C. J., and Sheldon and Norcott, Js.

*Syllabus*

The plaintiff, as parent and next friend of her daughter, B, who had sustained injuries during a high school cheerleading practice, sought to recover damages for negligence from the defendants, the city of Bristol, the city's board of education and the coach who had supervised the practice at the time of B's injuries. The defendants filed a motion for summary judgment on the ground of governmental immunity, and the plaintiff filed an opposition to the defendants' motion with attached exhibits that included, inter alia, excerpts from the original certified transcripts of the depositions of B and the coach. The defendants thereafter filed an additional excerpt from the transcript of B's deposition. The plaintiff, without permission of the court, then filed a surreply brief, and the defendant, with the permission of the court, filed a surreply brief. The trial court stated during oral argument on the motion for summary judgment that it would not consider the deposition excerpts because it considered them to be unauthenticated and, thus, inadmissible as evidence. The court stated that the excerpts were not separately certified as true and accurate excerpts from the original certified deposition transcripts, and were not accompanied by affidavits from persons with personal knowledge of the contents of the original certified transcripts averring that the excerpts were true and accurate excerpts of the original certified transcripts. The trial court granted the motion for summary judgment, concluding, inter alia, that the defendants were entitled to governmental immunity. The court thereafter rendered judgment for the defendants, from which the plaintiff appealed to this court. *Held*:

1. The trial court, in deciding the motion for summary judgment, improperly failed to consider the excerpts that the plaintiff submitted from the certified deposition transcripts of B and the coach, both of whom were fully available, and did not object to them until prompted to do so by the court; because the applicable rule of practice (§ 17-46) expressly allows for the use of such excerpts, which were submitted with pages from the original deposition transcripts that established that the original transcripts were accurate transcriptions of the testimony under oath by B and the coach, the excerpts were properly authenticated under the applicable rule of practice (§ 17-45) that governs admissible evidence as to issues raised in summary judgment motions, and, thus, the trial court erred by refusing to consider them in deciding the motion.

2. The trial court did not abuse its discretion in not considering the parties' surreply memoranda of law; the applicable rule of practice ([2016] § 11-10) provided that no surreply memoranda can be filed without the permission of the judicial authority, and the court, thus, had the discretion not to consider that additional briefing.

Argued October 16, 2017—officially released August 28, 2018

*Procedural History*

Action to recover damages for the defendants' alleged negligence, and for other relief, brought to the Superior Court in judicial district of New Britain, where the court, *Young, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed; further proceedings*.

*Daniel P. Scholfield*, with whom, on the brief, was *Steven J. Errante*, for the appellant (plaintiff).

*Thomas R. Gerarde*, with whom was *Ondi A. Smith*, for the appellees (defendants).

*Opinion*

SHELDON, J. The plaintiff, Dawn Teodoro, as parent and next friend of her minor daughter, Brianna Teodoro, appeals from the summary judgment rendered by the trial court in favor of the defendants, the city of Bristol (city), the Bristol Board of Education (board) and board employee Sophia Bayne, in this action to recover damages for injuries suffered by Brianna due to the alleged negligence of the defendants in conducting and supervising a high school cheerleading practice. On appeal, the plaintiff challenges the court's decision to grant the defendants' motion for summary judgment without considering either (1) excerpts from the certified transcripts of two depositions taken in this case, one of Brianna and the other of Bayne, which the plaintiff had filed in opposition to the motion, or (2) the surreply brief with attached exhibits which she later filed, without the court's permission, in further opposition to the motion.

The amended complaint and record demonstrated the following. The plaintiff alleged that the defendants negligently caused Brianna's injuries and resulting damages as follows. On the evening of January 7, 2013, while Brianna was practicing as a member of the junior varsity cheerleading squad of Bristol Eastern High School under the supervision of Bayne, her coach, she attempted, for the first time ever, to perform a cheerleading stunt known as the "ladder stunt." To perform that stunt, two cheerleaders acting as "bases," flanked by front and back spotters to protect the participants' safety, lift a third cheerleader acting as the "flyer" into the air, where they hold her as she transitions from half to full extension. Practicing as the "flyer" with her stunt group on that evening, Brianna had difficulty performing the ladder stunt, twice attempting but failing to complete it. Although Bayne was aware of Brianna's difficulty in performing the stunt and of her resulting apprehensiveness about trying to perform it again, she instructed Brianna to "try it one more time," but then walked away to assist other cheerleaders without assisting Brianna to perform the stunt a third time or giving her further instruction as to how to do so correctly. When Brianna thereafter complied with Bayne's instructions by trying to perform the stunt again, she fell to the floor after being lifted into the air and transitioning from half to full extension, causing her to break several bones in her arm. The plaintiff alleged that Bayne's conduct in supervising Brianna was negligent because, inter alia, she encouraged Brianna to perform the stunt again despite Brianna's uncertainty and apprehensiveness, when she knew or should have known that it was unsafe and unreasonable to do so; failed to give Brianna hands-on assistance in performing the stunt again or proper instruction as to how to perform it correctly when it should have been apparent that

her failure to do so would likely subject Brianna to imminent harm; and failed to provide sufficient spotters to catch Brianna if she fell. The defendants answered the plaintiff's amended complaint by denying all allegations of negligence against them and interposing the special defense of qualified governmental immunity.

On October 9, 2015, the defendants filed a motion for summary judgment on the ground of qualified governmental immunity, together with a supporting memorandum of law and several exhibits, including an affidavit from Christopher Cassin, the board's supervisor of athletics, physical education and health; an affidavit from Bayne; and a memorandum of decision granting a defense motion for summary judgment on the ground of qualified governmental immunity in another Superior Court action in which the plaintiff, an injured cheerleader, sought to recover damages from municipal defendants for injuries she claimed to have suffered due to their negligence in conducting a high school cheerleading practice. On the basis of those submissions, the defendants argued that there was no genuine issue of material fact that they were entitled to prevail on their special defense of qualified governmental immunity, and thus to the entry of judgment in their favor on the plaintiff's claims of negligence, because the conduct and supervision of cheerleading practices is a governmental activity that requires the exercise of discretion. They further argued that there was no evidence that their alleged negligence in exercising such discretion in this case came within an exception to qualified governmental immunity by subjecting Brianna, as an identifiable member of a narrowly defined class of foreseeable victims, to a risk of imminent harm.

On December 11, 2015, the plaintiff filed a memorandum of law in opposition to the defendants' motion along with several attached exhibits, including her second amended complaint; excerpts from the original certified transcripts of Brianna's and Bayne's depositions in this case; the plaintiff's disclosure of Dr. Gerald S. George as an expert witness on the subjects of biomechanics and cheerleading safety; an excerpt from the National Federation of State High School Associations 2012–13 Spirit Rules Book; and an excerpt from the Bristol Public Schools Coaching Handbook.[1] On the basis of those materials, the plaintiff claimed that the defendants' motion should be denied because the evidence she had submitted raised two genuine issues of material fact as to the viability of the defendants' special defense of qualified governmental immunity: first, whether the conduct and supervision of cheerleading practices involves the performance of ministerial, rather than discretionary, duties, as to which the special defense of qualified governmental immunity is unavailable as a matter of law; and second, even if the conduct and supervision of cheerleading practices involves the performance of discretionary duties, whether Bayne's

alleged negligence in performing such duties in this case, as evidenced by Brianna's and Bayne's deposition testimony, fell within an exception to qualified governmental immunity because Brianna was subjected to a risk of imminent harm.

Thereafter, on March 2, 2016, the defendants filed a reply memorandum in further support of their motion. Attached to the reply memorandum were two additional exhibits: a supplemental affidavit from Cassin, and an additional excerpt from the original certified transcript of Brianna's deposition. On the basis of Brianna's deposition testimony, so supplemented, the defendants argued, inter alia, that before Brianna fell, she did not object to performing the ladder stunt again or tell Bayne of her fear of so doing, and thus Bayne had no notice that by instructing Brianna to try the stunt one more time, she was subjecting her to a risk of imminent harm. Both the plaintiff and the defendants included, as parts of each deposition excerpt they filed in connection with the defendants' motion, the cover page of the original deposition transcript from which the excerpt in question was taken, the page of the transcript on which the court reporter certified the truth and accuracy of the entire deposition, as he transcribed it, and the page of the transcript on which the deponent swore before the court reporter, who took her oath in his capacity as a notary public, that she had read the entire transcript of the deposition and certified to its truth and accuracy, as transcribed or as later corrected on the attached errata sheet.[2] Neither party objected in writing to the other party's submission of or reliance upon any such deposition excerpt, so authenticated, as evidence in support of or in opposition to the motion, or suggested that any corrections had ever been made to the transcript on an errata sheet.

On March 4, 2017, after the previously described memoranda and materials were filed, the plaintiff, without the permission of the trial court, filed a surreply brief in further opposition to the motion. Attached to that brief were several additional exhibits, including an affidavit from her expert, Dr. George; a document listing the "highlights" of Dr. George's professional resume; and a copy of the bylaws of the Connecticut Student Activities Conference. These additional exhibits bore only upon the plaintiff's claim that the defendants were not entitled to governmental immunity because their duties in conducting and supervising cheerleading practices were ministerial, rather than discretionary, in nature.

The court heard oral argument on the defendants' motion on March 7, 2016. During the argument, when the defendants' counsel began to present argument in support of the motion based upon Brianna's certified deposition testimony, the court advised the parties that it considered the deposition excerpts they had submit-

ted to be unauthenticated, and thus to be inadmissible as evidence on the motion unless all parties consented, because such excerpts were neither separately certified as true and accurate excerpts from the original certified deposition transcripts, nor accompanied by affidavits from persons with personal knowledge of the contents of such original certified transcripts, averring that the excerpts were true and accurate excerpts from those transcripts. When the defendants' counsel was informed by the court that she could, but need not, consent to the use of the deposition excerpts as evidence in support of or in opposition to the motion, she promptly reversed course, declining to offer her consent, although the deposition excerpt she had submitted and relied upon was presented and authenticated in the same manner as the excerpts submitted by the plaintiff. It would be "fair," she suggested, if no such deposition excerpt from either party was considered in deciding the motion. Accordingly, the court announced that, in the absence of an agreement among the parties, none of the deposition excerpts they had filed would be considered in deciding the motion.

When counsel for the plaintiff was so informed of the court's decision not to consider the deposition excerpts she had filed in opposition to the defendants' motion, she promptly asked the court for permission to supply it with a sworn affidavit averring that the excerpts she had submitted were true and accurate excerpts from Brianna's and Bayne's original certified deposition transcripts. The court twice refused this request despite observing that no party had suggested that any such excerpt was inaccurate in any way.

The court also advised the parties during the argument that the plaintiff's surreply brief and attached exhibits had been filed improperly, without the court's permission, in violation of Practice Book § 11-10 (c). Even so, it granted the defendants permission to file their own surreply brief in response to the plaintiff's surreply brief in case it should ultimately decide to consider such briefs and exhibits in deciding the motion. One week later, on March 14, 2016, the defendants filed their own surreply brief without additional exhibits.

By an order dated April 18, 2016, the court granted the defendants' motion for summary judgment. The court ruled, on the basis of the evidence it found to be admissible, that the defendants were entitled to governmental immunity because there was no genuine issue of material fact that (1) cheerleading is a student athletic activity authorized by the board, and thus Bayne's conduct in supervising that activity was public in nature;[3] (2) Bayne's duties while engaging in such supervisory activity were discretionary, rather than ministerial, in nature; and (3) Bayne's alleged negligence in performing such discretionary duties on the evening of Brianna's fall did

not come within an exception to qualified governmental immunity by subjecting Brianna, as an identifiable member of a narrowly defined class of foreseeable victims, to a risk of imminent harm.[4] In rendering summary judgment in favor of the defendants as aforesaid, the court did not consider any of the deposition excerpts that the parties had filed in connection with the defendants' motion on the previously stated ground that they were not authenticated properly. Nor did the court consider either party's surreply brief or the exhibits attached to the plaintiff's surreply brief because, as it had noted during the argument, the plaintiff's surreply brief and exhibits had been filed without the court's permission.

On appeal, the plaintiff claims that the trial court erred in granting the defendants' motion for summary judgment (1) without considering the deposition transcript excerpts she had filed in opposition to the motion, and (2) without considering her surreply brief and attached exhibits. We agree with the plaintiff that the trial court erred in not considering the deposition excerpts she offered in opposition to the motion on the ground that they were not authenticated properly. We disagree, however, that the trial court abused its discretion in not considering the plaintiff's surreply brief and attached exhibits. We therefore reverse the summary judgment rendered by the trial court in favor of the defendants, and remand this case for further consideration of the defendants' motion in accordance with this opinion, and for such other proceedings as may thereafter be appropriate, according to law.

"Before addressing the plaintiff's claims in greater detail, we note that . . . [b]ecause the present case was disposed of by way of summary judgment, we first address the appropriate framework for appellate review of a summary judgment determination." (Internal quotation marks omitted.) *Grady* v. *Somers*, 294 Conn. 324, 331, 984 A.2d 684 (2009). The purpose of summary judgment procedure is to provide a vehicle for ending litigation short of trial where the admissible evidence available to the parties, as presented to the court, establishes that the moving party is entitled to judgment as a matter of law because there is no genuine issue as to one or more material facts upon which his right to judgment depends. See Practice Book § 17-49 (summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law").

The ultimate facts upon which a party's right to a judgment in his favor depends are determined by the pleadings, which not only identify the claims and defenses upon which the parties have joined issue, but the factual theories upon which they have committed

themselves to proving those claims and defenses. Although the sufficiency of such pleaded allegations to state viable claims and defenses can be determined by comparing the pleaded claims and defenses to the pleaded allegations, the availability to the pleader of evidence to prove such allegations cannot be inferred from the mere fact that they have been pleaded. Accordingly, our rules of court require any party moving for summary judgment to prove to the court that admissible evidence available to him not only tends to prove the material facts upon which his right to judgment depends, but eliminates any genuine issue as to the existence of such material facts, thereby establishing his right to prevail on his claim or defense as a matter of law. A party opposing summary judgment, by contrast, need only demonstrate that the admissible evidence available to the moving party is insufficient to eliminate any genuine issue as to the material facts upon which the movant's right to judgment depends, or that admissible evidence available to her is sufficient to raise a genuine issue as to the existence of one or more such material facts. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Grady* v. *Somers*, supra, 294 Conn. 331.

Because a motion for summary judgment must be adjudicated without conducting trial, our rules of practice have established an alternative procedure for establishing the availability of admissible evidence in support of or in opposition to a motion for summary judgment. Under that procedure, the party seeking summary judgment must first support his motion by filing certain designated types of materials with the court that constitute, contain or demonstrate the availability to the party of admissible evidence. Such materials, pursuant to Practice Book § 17-45, include sworn affidavits, certified transcripts of testimony given under oath, disclosures and pleadings. If such materials establish the availability of admissible evidence tending to prove the material facts upon which the movant's right to judgment depends, the burden shifts to the nonmovant to file similar materials tending to raise a genuine issue as to any such material fact. The court's task in reviewing the parties' submissions is *not* to decide any factual issues they raise, but only to decide if, in fact, they raise any such factual issues, as by demonstrating a potential inconsistency or conflict in the admissible evidence concerning one or more facts upon which the movant's right to judgment depends. In the event the court determines that there is such a genuine issue of material fact, it must deny the motion for summary judgment and leave resolution of the issue to the trier

of fact at trial, who will hear and evaluate the evidence on both sides of that issue firsthand before deciding it. "On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the [defendants'] motion for summary judgment is plenary." (Internal quotation marks omitted.) Id.

## I

The first issue raised in this appeal concerns the process by which one form of evidence routinely submitted in connection with motions for summary judgment must be authenticated before the court can consider it in deciding such a motion. The evidence in question consists of excerpts from certified transcripts of testimony given under oath. Because the purpose of authentication, as established in our case law, is to make a preliminary showing that the proffered evidence is what the party offering it claims it to be, it is important at the outset to understand the reason why such transcripts, if authenticated, are admissible on a motion for summary judgment. Importantly, certified transcripts of testimony given under oath are *not* admitted in connection with such motions because they *constitute* admissible evidence at trial. This is because, under our rules of evidence, the admissibility of prior sworn testimony depends upon both the unavailability of the witness to testify at trial and the prior availability to all other parties of an opportunity to cross-examine the witness when he gave his prior sworn testimony. Conn. Code Evid. § 8-6 (1). Instead, the reason why such certified transcripts are admissible in connection with summary judgment motions is to demonstrate the availability to the party submitting them of live testimony from the witnesses, consistent with their prior sworn testimony, as it appears in the certified transcripts. The purpose of authentication of such certified transcripts is thus to make a preliminary showing that they accurately record testimony that the witnesses in question gave under oath.

In this case, the trial court sua sponte refused to consider two deposition excerpts filed by the plaintiff and one deposition excerpt filed by the defendants in connection with the defendants' motion for summary judgment because they failed to submit either full certified transcripts of the witnesses' depositions or to file affidavits from knowledgeable witnesses separately establishing that the excerpts in question were true and accurate excerpts from such full certified transcripts. The plaintiff complains that the trial court's ruling to this effect constituted an overly strict application of the authentication requirement and deprived her improperly of actual, reliable proof as to the availability of admissible evidence in opposition to the defendants'

motion. For the following reasons, we agree with the plaintiff and reverse the trial court's ruling rendering summary judgment in favor of the defendants in this case.

The plaintiff asserts that our standard of review over her first claim is plenary. The defendants argue, to the contrary, that we must review the plaintiff's claim under the abuse of discretion standard. Because, however, the claim involves the interpretation of a rule of practice, we agree with the plaintiff.[5] See *Wiseman* v. *Armstrong*, 295 Conn. 94, 99, 989 A.2d 1027 (2010) ("[t]he interpretation and application of a statute, and thus a Practice Book provision, involves a question of law over which our review is plenary").

"Practice Book § 17-45 provides in relevant part that [a] motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, *certified transcripts of testimony under oath*, disclosures, written admissions and the like. . . . That section does not mandate that those documents be attached in all cases, but we note that [o]nly evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment. . . . Practice Book § [17-45], although containing the phrase including but not limited to, contemplates that supporting documents to a motion for summary judgment be made under oath or otherwise reliable. . . . [The] rules would be meaningless if they could be circumvented by filing [unauthenticated documents] in support of or in opposition to summary judgment. . . .

"Therefore, before a document may be considered by the court [in connection with] a motion for summary judgment, there must be a preliminary showing of [the document's] genuineness, i.e., that the proffered item of evidence is what its proponent claims it to be. The requirement of authentication applies to all types of evidence, including writings . . . . Conn. Code Evid. § 9-1 (a), commentary. Documents in support of or in opposition to a motion for summary judgment may be authenticated in a variety of ways, including, but not limited to, a certified copy of a document or the addition of an affidavit by a person with personal knowledge that the offered evidence is a true and accurate representation of what its proponent claims it to be." (Emphasis altered; internal quotation marks omitted.) *Gianetti* v. *Anthem Blue Cross & Blue Shield of Connecticut*, 111 Conn. App. 68, 72–73, 957 A.2d 541 (2008), cert. denied, 290 Conn. 915, 965 A.2d 553 (2009).

This court has never directly addressed the issue of whether an excerpt from a certified deposition transcript must be separately certified as such, apart from the certification of the original transcript from which it was excerpted, in order to make it admissible in support of or in opposition to a motion for summary

judgment under Practice Book § 17-45. Our Superior Courts are divided as to what type of certification is required for that purpose.[6] Because our review is plenary, we consider, but are not bound by, these decisions.

Where no party objects, a court may, but is not required to, review uncertified deposition transcripts. *Barlow* v. *Palmer*, 96 Conn. App. 88, 92, 898 A.2d 835 (2006). There is no indication in the record that the present defendants objected to the deposition excerpts until the court, sua sponte, invited them to do so at oral argument.[7] In their reply memorandum, by contrast, the defendants did object to the plaintiff's exhibit D, an uncertified disclosure of the plaintiff's expert witness. At oral argument, moreover, the defendants also objected to the uncertified coaching handbook as improperly before the court because it was not authenticated. However, far from objecting to the plaintiff's submission of the subject excerpts from the certified deposition transcripts of Brianna and Bayne, the defendants themselves submitted, as an attachment to their reply memorandum, an overlapping excerpt from Brianna's certified deposition transcript, which was authenticated in precisely the same manner as the plaintiff had authenticated the excerpt from that same deposition that she had submitted.[8] By so doing, without correcting the plaintiff's submission in any way, then expressly relying upon such excerpts in their own summary judgment argument, the defendants effectively stipulated to the authenticity of both excerpts from Brianna's deposition, which the parties had submitted as true and accurate excerpts from the original certified transcript of that deposition. "Stipulations or admissions prior to or during a trial provide two other means of authentication." Conn. Code Evid. § 9-1 (a), commentary.

The plaintiff claims that the trial court's reading of Practice Book § 17-45 was overly narrow, and that that section allows a court to consider more than merely entire certified deposition transcripts or excerpts from deposition transcripts that have been separately certified for their truth and accuracy as such by an affidavit from the court reporter or the submitting party's attorney. She contends that because the phrase "certified transcripts of testimony under oath" is not defined in Practice Book § 17-45 or elsewhere, and the deposition transcript excerpts she submitted along with her opposition memorandum of law included the deposition cover page, the page on which the court reporter certified the accuracy of the entire deposition transcript as he transcribed it, and the page on which the deponent swore that she had read the entire deposition transcript and certified to its truth and accuracy, so transcribed, it fully satisfied the requirements of the rules of practice. At oral argument, the trial court disagreed with the plaintiff's contention.[9] We, however, agree with the plaintiff.

Because all that is required for a court to consider a document in support of or in opposition to a motion for summary judgment is "a preliminary showing of [the document's] genuineness"; (internal quotation marks omitted) *New Haven* v. *Pantani*, 89 Conn. App. 675, 679, 874 A.2d 849 (2005); we hold that the certification page from the original certified deposition transcript from which an excerpt was taken is sufficient to authenticate the excerpt as an accurate transcription of testimony given under oath, and thus to establish its admissibility for summary judgment purposes, at least where, as here, it is accompanied by other portions of the original deposition transcript tending to establish that the testimony set forth in it was given under oath and that it was accurately transcribed. Such proof of genuineness is fully consistent with the purpose for which certified transcripts of depositions are admitted in support of or in opposition to summary judgment motions, which is to prove that the submitting party has available to her, for presentation at trial, admissible evidence consistent with the witness' prior recorded testimony under oath. If the court reporter has duly certified that the entire deposition was given under oath and that it was accurately transcribed, he has thereby, necessarily, certified that the excerpt in question was accurately transcribed as part of that sworn testimony, a fact that was confirmed in this case by the defendants' own submission of and reliance upon excerpts from the same original deposition transcript in support of their motion, and by the deponent's certification under oath that she had read her entire testimony, so transcribed, and found it to be truthful and accurate.

Our rules of practice, in fact, expressly allow for the use of such excerpts. See Practice Book § 17-46, which provides in relevant part: "Sworn or certified copies of all papers *or parts* thereof referred to in an affidavit shall be attached thereto." (Emphasis added.) There is therefore no requirement that the entire document be attached to make an excerpt therefrom admissible in support of a summary judgment motion.

We acknowledge concerns that a trial court may have in considering an excerpt from a deposition transcript; see footnote 9 of this opinion; however, we find that those concerns are easily addressed. In cases such as this one, where both parties have access to full copies of the original deposition transcripts from which the excerpts in question were taken, if a party includes the cover page of the transcript, the page on which the court reporter certifies the accuracy of his transcription, and the page on which the deponent certifies under oath that, upon reading the entire deposition, the testimony in it is truthful and accurate, nothing more can be required of the submitting party to make her "preliminary showing of [the document's] genuineness . . . ." (Internal quotation marks omitted.) *New Haven* v. *Pan-*

*tani*, supra, 89 Conn. App. 679. A party must, of course, include enough of the full deposition transcript in the submitted excerpt to put the testimony upon which she wishes to rely in its proper context, so that its meaning can be understood and its true significance can be properly evaluated by the court, but she has no need—indeed, no right—to file other portions of the deposition that contain testimony that is irrelevant to the issues raised on summary judgment, or that contain answers that are beyond the personal knowledge or competency of the deponent or are otherwise inadmissible in evidence. If, however, an opposing party wishes to object to a proffered deposition excerpt, in whole or in part, on any basis, he has ample means at his disposal to protect his rights. If he feels that the chosen excerpt is inadmissible in evidence on the issues raised on the pending motion, he can move to strike the entire excerpt or object to particular portions of it. If the court agrees with his position, it can grant him relief after both parties have been heard on the issue. If, by contrast, he feels that the excerpt, though admissible as submitted, is nonetheless misleading because it does not include portions of the original deposition transcript that shed important light on issues which the excerpt concerns, he can seek the court's permission, under § 1-5 (b) of the Connecticut Code of Evidence, to introduce any other part of the deposition that "ought in fairness to be considered contemporaneously with" it. That, in fact, is what the defendants in this case did by attaching additional excerpts from Brianna's deposition to their reply memorandum. Where, moreover, a party proffers excerpts from a certified deposition transcript that has not already been made available to all counsel, Practice Book § 17-47 entitles his opponent to request a postponement of all summary judgment proceedings to enable him to conduct further investigation, pursue additional discovery or obtain additional affidavits in order to respond effectively to the motion.[10]

Here, the plaintiff submitted excerpts from the certified depositions of Brianna and Bayne, both of which were fully available to the defendants, who did not object to them until prompted to do so by the court. Because such excerpts were submitted along with pages from the original deposition transcripts establishing that such original transcripts were accurate transcriptions of the deponents' truthful testimony under oath, such excerpts were properly authenticated for the purpose of Practice Book § 17-45, which is to establish the availability of admissible evidence bearing upon the issues raised on the defendants' summary judgment motion. For that reason we conclude that the court erred by refusing to consider such deposition excerpts in deciding the motion. Thus, we reverse the court's granting of summary judgment in favor of the defendants and remand this case for further proceedings on that motion.

## II

The plaintiff also claims that the trial court erred in not considering the parties' reply memoranda. We review this claim under the abuse the discretion standard. "An abuse of discretion standard would be consistent with the general rule that [t]he trial court has wide discretion in granting or denying amendments [to pleadings] before, during, or after trial." (Internal quotation marks omitted.) *Dimmock* v. *Lawrence & Memorial Hospital, Inc.*, 286 Conn. 789, 799, 945 A.2d 955 (2008).

The plaintiff claims that the court agreed at oral argument to consider the parties' reply memoranda. It is undisputed that the court granted the defendants one week from oral argument to file a surreply memorandum in response to the plaintiff's surreply. It is further undisputed that the court did not consider either party's surreply briefs in deciding the motion for summary judgment.

Practice Book § 11-10 was amended on June 12, 2015, with an effective date of January 1, 2016, to add current subsections (b) and (c) to the rule. According to commentary accompanying the amendment, "[t]his change . . . [clarified that] [n]o surreply memoranda can be filed without the permission of the judicial authority." Practice Book (2016) § 11-10, commentary. The court therefore had discretion under the rules of practice not to consider this additional briefing. We conclude that the court did not abuse its discretion in not considering the parties' surreply memoranda.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

[1] Of all of the exhibits attached to the plaintiff's memorandum of law, only the excerpts from the certified deposition transcripts are at issue in this appeal.

[2] Neither party included such errata sheets.

[3] See *Jahn* v. *Board of Education*, 152 Conn. App. 652, 658–59, 99 A.3d 1230 (2014); *Sevigny* v. *Daviau*, Superior Court, judicial district of Windham, Docket No. CV-12-6005018, 2013 WL 4504831 (July 31, 2013).

[4] On the basis of the information it did consider, the court concluded that this was not a case in which a specific plaintiff was an identifiable victim because such cases, primarily *Sestito* v. *Groton*, 178 Conn. 520, 423 A.2d 165 (1979), are limited to their facts. See, e.g., *Edgerton* v. *Clinton*, 311 Conn. 217, 240, 86 A.3d 437 (2014). Instead, the court determined that only the identifiable class of victims exception to governmental immunity could potentially apply, and pursuant to *Grady* v. *Somers*, 294 Conn. 324, 984 A.2d 684 (2009), the identifiable class of foreseeable victims is limited to schoolchildren attending public school during school hours.

[5] Even if we assume arguendo that the trial court's decision to accept or reject the deposition transcript excerpts should be reviewed under the abuse of discretion standard; see *Barlow* v. *Palmer*, 96 Conn. App. 88, 91, 898 A.2d 835 (2006); the court's denial of the plaintiff's request to cure the defect would constitute an abuse of discretion. See, e.g., *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 484–85, 970 A.2d 592 (2009) (court should allow requested supplementation "if it will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other party" [internal quotation marks omitted]).

[6] There is no consensus among Superior Court judges as to whether and

under what circumstances excerpts from deposition transcripts are sufficiently authenticated such that they can be considered in support of or in opposition to motions for summary judgment. One court held that deposition transcript excerpts, with cover pages and court reporter certifications, may properly be considered under Practice Book § 17-45. See *Clark* v. *Norwalk*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-93-0146667, 1998 WL 886599, *3 (December 10, 1998). Other courts have considered excerpts from deposition transcripts when a copy of the court reporter's certification of the entire original transcript is submitted with it. See *Mangels* v. *Yale*, Superior Court, judicial district of Fairfield, Docket No. 02-0389790-S, 2006 WL 438593, *3 (February 15, 2006); *Jensen* v. *DePaolo*, Superior Court, judicial district of New Haven, Docket No. CV-01-0277460-S, 2004 WL 166486, *1 n.4 (June 30, 2004). Other courts have held that providing the title page but not the certification page with an excerpt from a deposition; see *Marsala* v. *Yale-New Haven Hospital, Inc.*, Superior Court, judicial district of Ansonia-Milford, Docket No. 12-6010861 (March 19, 2015) (60 Conn. L. Rptr. 196, 197 nn.4–8), aff'd, 166 Conn. App. 432, 142 A.3d 316 (2016); or a certification page from a full deposition with an excerpt from that deposition; see *Colon* v. *New Haven*, Superior Court, judicial district of New Haven, Docket No. CV-09-6004291-S, 2011 WL 4953436, *2 n.1 (September 28, 2011); will not adequately authenticate such deposition excerpts for consideration in support of or in opposition to a motion for summary judgment.

[7] The following colloquy occurred:

"The Court: . . . [M]y general practice for as long as I've been doing this has been that I follow the rules of practice unless there is consent by both sides to look away from the requirements of the Practice Book, and I don't have that here, mainly because [the defendants'] exhibits mostly are authenticated, with the exception of one, which is exhibit E. [The defendants do not] have that problem. Although, if I were to allow you to submit an affidavit that, what is there—and *I don't think there's any claim that the excerpts are inaccurate*, but to authenticate that that is the testimony, that there is no errata that changes any of the substantive testimony, then I would consider [the defendants'] exhibit E as well because there would be some sort of agreement of counsel on that. [The defendants' counsel], back to you, briefly. Is there an agreement on that as to the deposition excerpts?

"[The Defendants' Counsel]: Uh—

"The Court: It's up to you. You don't have to.

"[The Defendants' Counsel]: Your Honor, I don't want to concede that the entirety of the plaintiff's submissions are appropriate for a motion for summary judgment at this point. I mean, exhibit E was attached to point out portions of the transcript that weren't included in the plaintiff's submission because there were only certain pages here and there. So, if Your Honor is not considering transcripts on both sides, I think that would be fair.

"The Court: Okay. So, we don't have an agreement. So, I'm just letting you know that, and it can't come as any surprise that I won't consider things that are not properly authenticated unless there's agreement of counsel, and, here, we don't have." (Emphasis added.)

[8] The defendants' exhibit E was an excerpt from the transcript of Brianna's deposition that included the first page, a portion of the deponent's testimony, the page on which the court reporter certified the entire deposition, and the page with the certificate of the deponent.

[9] The following colloquy occurred:

"[The Plaintiff's Counsel]: With respect to the deposition excerpts, it was my understanding under the rule that a certification page would certify those excerpt transcripts were accurate and authenticate them.

"The Court: If the entire transcript was there, I wouldn't have a problem with it. But when you're taking page 3 and then page 5 and then page 8 and then page 27, the normal practice would be to, either you, yourself, saying that or whoever took the deposition, that this is what transpired and these are from the original—I don't even think you have to be there, but somebody needs to authenticate it, even if it's counsel. If it's not counsel, it should properly be the court reporter that does that, and I can tell you from my own practice way back when, I would go to the court reporter with copies of the transcript and say, give me a certification page, and they would do that; then you don't have problems with it. But you open yourself up to having them excluded by the manner that you've chosen to do these things.

"[The Plaintiff's Counsel]: I will state in full disclosure, Your Honor, that I—we actually, when we had these depositions, initially, did not even have the certification page from the court reporter, and so I went so far as to

get that, thinking that it would be enough. Now, seeing that—

"The Court: How could you not have the certification page if you're getting a sealed transcript?

"[The Plaintiff's Counsel]: We didn't have the signed certification page.

"The Court: Okay. And it may be a question of a missing errata page. I don't know if your client changed any of her answers substantively because I don't know whether there was an errata page, and I don't know whether any of the testimony changed because those excerpts haven't been certified. That's the problem I have."

The plaintiff's counsel then twice requested judicial permission to provide an affidavit authenticating and certifying the deposition transcript excerpts, which the court denied.

[10] Practice Book § 17-47 provides in relevant part: "Should it appear from the affidavits of a party opposing the motion that such party cannot, for reasons stated, present facts essential to justify opposition, the judicial authority . . . may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

―――――――――――――――――――――