******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STEPHANIE DANNER *v.* COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES ET AL.
## (AC 44194)

Alvord, Alexander and Vertefeuille, Js.

*Syllabus*

The plaintiff filed an affidavit of illegal discriminatory practice with the defendant Commission on Human Rights and Opportunities, alleging that the defendant A Co. wrongfully terminated her employment. Following an assignment of the matter to the commission's Office of Public Hearings, a human rights referee granted A Co.'s motion for summary judgment, finding that there was no genuine issue of material fact. The plaintiff and the commission separately appealed the referee's decision granting the motion for summary judgment to the Superior Court. The plaintiff claimed that genuine issues of material fact existed. The trial court consolidated the appeals, sustained the consolidated appeal and remanded the matter for a trial before the Office of Public Hearings, concluding that the referee improperly rendered summary judgment because A Co. did not meet its burden of establishing that there were no genuine issues of material fact. On A Co.'s appeal to this court, *held* that the trial court properly sustained the consolidated appeal and remanded the matter for a hearing: the court properly considered the plaintiff's affidavit as competent evidence in opposition to A Co.'s motion for summary judgment as the plaintiff's affidavit of discriminatory practice was sworn and was properly considered pursuant to the applicable rule of practice (§ 17-49); moreover, the court properly conducted a plenary review of the record in considering whether genuine issues of material fact existed, as the deferential standard used to review administrative fact-finding did not extend to the determination of whether genuine issues of material fact existed in the summary judgment context; furthermore, the court did not err in considering whether genuine issues of material fact existed, as the record contained contradictory information, including a sworn statement by an employee of A Co. that the plaintiff's job duties required her to be physically present at the workplace and the plaintiff's sworn statement that she had received a workplace accommodation to work from home, and the referee, rather than identifying factual disputes raised by the competing affidavits, improperly decided the factual question by crediting the statements made in the affidavit of the A Co. employee and improperly determined that there were no genuine issues of material fact.

Argued March 2—officially released October 12, 2021

*Procedural History*

Appeals from the decision by a human rights referee for the named defendant rendering summary judgment in favor of the defendant Atos IT Solutions and Services, Inc., and denying the plaintiff's motion for reconsideration, brought to the Superior Court in the judicial district of New Britain, where the court, *Cordani, J.*, consolidated the appeals; thereafter, the court, *Cordani, J.* rendered judgment sustaining the appeal and remanding the matter to the named defendant for trial, from which the defendant Atos IT Solutions and Services, Inc., appealed to this court. *Affirmed.*

*Martin J. Regimbal*, pro hac vice, with whom was *Elizabeth F. Flynn*, for the appellant (defendant Atos IT Solutions and Services, Inc.).

*Zachary T. Gain*, for the appellee (plaintiff).

*Michael E. Roberts*, for the appellee (named defendant).

*William Tong*, attorney general, *Clare E. Kindall*, solicitor general, and *Colleen B. Valentine* and *Matthew F. Larock*, assistant attorneys general, filed a brief for the state of Connecticut as amicus curiae.

*Opinion*

ALVORD, J. This appeal arises out of an action by the plaintiff, Stephanie Danner, in which a human rights referee (referee) from the Office of Public Hearings (office) of the defendant Commission on Human Rights and Opportunities (commission) rendered summary judgment in favor of the defendant Atos IT Solutions and Services, Inc. (Atos). Thereafter, the plaintiff and the commission appealed to the Superior Court,[1] which consolidated the appeals. The court, following oral argument, sustained the appeal and remanded the matter to the office for trial. Atos appeals from the judgment of the Superior Court sustaining the appeal and remanding the matter to the office for trial. On appeal, Atos claims that the Superior Court erred in considering the plaintiff's affidavit of illegal discriminatory practice as evidence in opposition to Atos' motion for summary judgment and in relying on the averments contained in the affidavit to determine that genuine issues of material fact existed. Atos also claims that the Superior Court erred in failing to afford deference to the referee's decision.[2] We affirm the judgment of the Superior Court.

The following facts and procedural history are relevant to this appeal. On December 5, 2016, the plaintiff filed an affidavit of illegal discriminatory practice with the commission. In her affidavit, the plaintiff averred: "[Atos] has an office located at 7 McKee Place, Cheshire, Connecticut 06410. . . . [Atos] employs [fifteen] or more individuals. . . . [Atos] employed [the plaintiff]. . . . [Atos] hired [the plaintiff] in May, 2001. . . . [The plaintiff's] original job position was technical services manager. . . . On or about August 8, 2016, [Atos] transferred [the plaintiff] to help desk agent. . . . [Atos] employs David Hamilton. . . . Hamilton is a supervisory employee. . . . Hamilton supervised [the plaintiff]. . . . [The plaintiff] has a disability. . . . Specifically, [the plaintiff] suffers from bipolar disorder and anxiety disorder. . . . [Atos] was aware of the mental disability. . . . [The plaintiff] had workplace accommodations for her disability. . . . The workplace accommodation was working from home. . . . The workplace accommodation was finite leaves of absences (continuous and intermittent). . . . In June, 2016, [the plaintiff] took a continuous leave of absence. The leave of absence went from June 14, 2016 through August 19, 2016. . . . The leave of absence was disability related. . . . The 2016 leave of absence was . . . protected [by the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 et seq. (2012)]. . . . Following her return from the FMLA protected 2016 leave of absence, [Atos] asked [the plaintiff] to submit documentation in support of her ongoing work from home accommodation. . . . [The plaintiff] complied with [Atos'] request and supplied documentation from her physician. . . . On October 17, 2016, [Atos] terminated

[the plaintiff's] employment. . . . [Atos] told [the plaintiff] that the termination was due to a reorganization and that her 'job was no longer available'. . . . In October, 2016, [Atos] employed about [forty] help desk employees. . . . [The plaintiff] is unaware of any other help desk employee terminated at the time [the plaintiff] was terminated. . . . There were two new help desk employees training for the position prior to [Atos] terminating [the plaintiff's] employment. . . . [Atos'] website had the help desk agent II job posted as being open in Cheshire, Connecticut at around the same time that it terminated [the plaintiff's] employment. . . . [The plaintiff] can perform the essential functions of the job with or without a reasonable accommodation. . . . Any and all excuses to be offered by [Atos] to explain the termination decision would be a pretext to mask discrimination and/or retaliation. . . . [The plaintiff] charges [Atos] with disability discrimination, failure to accommodate and retaliation."

On October 3, 2017, the matter was sent to the office for a public hearing through the early legal intervention program. On December 26, 2018, Atos filed a motion for summary judgment, in which it argued that the plaintiff could not establish a prima facie case of disability discrimination. Specifically, Atos argued that the plaintiff was not qualified to perform the functions of her position and that her employment was not terminated because of her disability. It further argued that, even if she could establish a prima facie case of discrimination, it had articulated a legitimate, nondiscriminatory reason for terminating her employment and that she could not demonstrate that such reason was pretextual. With respect to the plaintiff's claim of failure to provide reasonable accommodations for her disability, Atos argued that the plaintiff's only request, to work from home, was not a reasonable accommodation because being present in the office was an essential function that Atos was not required to waive. With respect to the plaintiff's claim of retaliation, Atos argued that there was no evidence indicating a causal connection between her requests for leave and to work from home and the termination of her employment.

In support of its motion, Atos submitted affidavits of Laurie Onderick, who was employed by Atos as a human resource specialist responsible for leave administration,[3] and Hamilton, who was employed by Atos as service desk manager and was the plaintiff's manager throughout her employment, along with evidentiary exhibits attached to both affidavits. In his affidavit, Hamilton averred, inter alia, the following: "I managed [the plaintiff] for her entire employment with Atos beginning in 2001, when she became an employee of Atos as a service desk manager level I. In this position, she supervised service desk employees. . . . Due to the loss of numerous Atos clients and due to the fact that many of Atos' IT help desk positions, including

those who reported to [the plaintiff], were being off-shored to the Philippines in a cost saving effort, [the plaintiff's] managerial position was eliminated in August, 2016, as her supervisory role was no longer necessary. . . . The offshoring efforts began approximately seven years ago. . . . In order to avoid terminating her altogether, I reassigned [the plaintiff] as a service desk technician tasked with providing computer support services to Cooper University Health Center ('Cooper Hospital'), an Atos client. . . . In this role [the plaintiff] was expected to answer the helpline telephones, receive, analyze, and resolve client issues, and escalate issues when necessary. The problem solving aspects of her position required her to learn new things every day and to retain that knowledge. . . . I assumed the duty of supervision over any remaining U.S. based service desk technicians working out of the Cheshire, Connecticut office. . . . While [the plaintiff] was on FMLA leave in the summer of 2016, she and I communicated via instant messages. It was then that she informed me that her alleged bipolar and anxiety disorders had severely impacted her short term memory. Specifically, one of her messages to me read, 'Honestly I don't know what you guys are going to do with me. I have nobody to manage and I'd do a shitty job if I did.' She further told me that she 'was trying to cut down on the Klonopin but it's at a why bother now. [Her] short term memory is really bad and [it's] permanent.' Exhibit I to this affidavit is a true and accurate copy of my text conversation with [the plaintiff]. . . .

"As a service desk technician on the Cooper Hospital account, it was critical that [the plaintiff] physically present to Atos' Cheshire, Connecticut office where the account was managed. Onsite attendance was required as problems had to be quickly resolved among the technicians and the managers to minimize impact to the client's services. Managers, like myself, had to be able to immediately and directly communicate with the service desk technicians assigned to us in case of failures to critical hospital systems. Delays in resolving such IT issues can literally have life or death implications. . . . For example, Atos was responsible for the computers located [in] Cooper Hospital's operating rooms. If these computers went down during surgery or for an extended period of time, the results could be dire. The urgent and fast pace[d] nature of the services the service desk technicians had to provide in conjunction with the managers required service desk technicians to physically be in the office. Thus, it was an essential job function for service desk technicians assigned to the Cooper Hospital account to work out of the Cheshire office as opposed to remotely. All of the U.S. based service desk technicians assigned to the account did so. . . . Similarly, all of the Philippines based service desk technicians assigned to the Cooper Hospital account also worked together out of a local office as

opposed to individuals working remotely from home. For the same reasons, none of these foreign based service desk technicians assigned to the Cooper Hospital [account] worked from home. . . . However, after September 14, 2016, [the plaintiff] only physically appeared for less than a single shift at the Cheshire office. . . .

"On October 9, 2016, I was informed that [the plaintiff's] physician had ordered that she work from home on a permanent basis. . . . Because such restriction could not be accommodated due to the fact that [the plaintiff's] position required that she present for work, l made the decision to terminate her. . . . Her last day of employment with Atos was October 17, 2016. . . . My decision to terminate [the plaintiff] was not based on her alleged bipolar disorder and anxiety, nor her requests to work from home or requests for leave. Instead, it was based solely on the fact that she could not perform an essential function of her job—physically presenting for work and she conceded she could not perform her duties. . . . On or around the day I terminated [the plaintiff], there was an online posting for a help desk analyst II position. However, the posting was in error and was unposted approximately one week later as the service desk was no longer hiring full time employees at this time. Thus, the position ultimately went unfilled by a full time employee. . . . I was laid off on November 7, 2017, as part of the same costs saving initiative that resulted in the elimination of [the plaintiff's] original managerial position."

On January 4 and 29, 2019, respectively, the commission and the plaintiff filed separate objections to Atos' motion for summary judgment, in which they both argued that the referee is not authorized to render summary judgment in the administrative proceedings before the office. The plaintiff also objected on the ground that the early legal intervention decision to send the matter directly to public hearing necessarily meant that there had been established the existence of genuine issues of material fact. Atos filed replies to both objections.

On February 22, 2019, the referee granted Atos' motion for summary judgment. The referee first determined that she had the authority to render summary judgment in the administrative proceedings before the office. The referee next rejected the plaintiff's argument that the fact that her complaint had been transferred to the office for a public hearing necessarily established the existence of genuine issues of material fact.

Ultimately, the referee concluded that Atos had met its initial burden of demonstrating the absence of any genuine issues of material fact. Specifically, she stated that Atos "ha[d] made an affirmative evidentiary showing that there is not a factual dispute that the [plaintiff's] position as a service desk technician required her to

be able to 'learn new things daily and to maintain such knowledge in order to receive, analyze, and resolve client issues, and determine to escalate issues when necessary.' " Referencing the plaintiff's text message to Hamilton, the referee found that, by the plaintiff's own admission, the plaintiff's "ability to perform her job duties was impaired as a result of her short-term memory loss due to the medications she was taking for bipolar disorder and anxiety." The referee further concluded that Atos had made an evidentiary showing that there was no factual dispute that the plaintiff's job duties required her to be present at Atos' Cheshire office and that her presence at the office was essential to her position. The referee concluded that Atos had met its initial burden of demonstrating the absence of any genuine issues of material fact both that the plaintiff was unable to perform the essential functions of her position and that an indefinite work from home accommodation was not a reasonable accommodation to which the plaintiff was entitled. Lastly, the referee concluded that Atos had met its initial burden of demonstrating that it had a legitimate, nondiscriminatory reason for terminating the plaintiff's employment.

The referee determined that "the [plaintiff] failed to present any concrete evidence demonstrating the existence of a disputed issue of material fact as to whether the [plaintiff] was able to perform the essential functions of the position, with or without a reasonable accommodation, to wit, that she was qualified for the job; whether the requested accommodation was a reasonable one and did not present an undue hardship on [Atos]; or whether the articulated business reasons for [Atos'] employment decisions were merely a pretext for discrimination." Accordingly, the referee concluded that Atos was entitled to judgment as a matter of law.

As to the plaintiff's retaliation claim, the referee determined that Atos was entitled to judgment as a matter of law after determining that the plaintiff had not "countered [Atos'] evidence by calling the tribunal's attention to other evidentiary items demonstrating that the [plaintiff's] participation in a statutorily protected activity was a motivating factor in her termination under the causal connection standard . . . or that [Atos'] proffered reasons for the [plaintiff's] termination were pretextual." (Citations omitted.) Accordingly, the referee granted Atos' motion for summary judgment as to all of the plaintiff's claims.

The plaintiff filed a motion for reconsideration, and Atos filed an opposition thereto. The motion was denied on March 20, 2019. Thereafter, the plaintiff appealed the decision of the referee to the Superior Court, and the parties briefed their positions. The court heard oral argument on July 9, 2020.

On July 13, 2020, the court, *Cordani, J.*, issued its memorandum of decision, in which it concluded that

the referee improperly rendered summary judgment because Atos had not met its burden of establishing that there were no genuine issues of material fact. The court first noted that the plaintiff's complaint is in the form of an affidavit and constitutes competent counter evidence in considering the motion for summary judgment. The court considered the affidavits of the plaintiff and of Hamilton and identified the following genuine issues of material fact: whether (1) "the [plaintiff's] employment [was] terminated because of a reorganization and her job [was] no longer . . . available as she reported that she was told, or because she could not perform an essential function of the job by being physically present in the office as . . . Hamilton stated"; (2) the job posting for the plaintiff's position was actually a mistake; (3) two new employees were training for the plaintiff's position at the time she was terminated; (4) the plaintiff already had been granted an accommodation for working from home as she had claimed, and, if yes, Atos was retracting a previously granted accommodation; (5) being physically present was an essential job function given that the same job was performed by people in the United States and in the Philippines, who presumably coordinate with each other; (6) working at home was a reasonable accommodation given the requirements of the position; (7) the plaintiff could perform the essential job functions as she had asserted; (8) it was a coincidence that the plaintiff's managerial position was allegedly eliminated in August, 2016, at the same time she was making her accommodation request, given that the offshoring of service desk positions had been ongoing for seven years; and (9) alleged comments made by the plaintiff in text messages meant that the plaintiff could not " 'learn new things daily and maintain such knowledge.' " The court also identified as a genuine issue of material fact what the essential job functions were for the plaintiff's position.

The court concluded that the referee's decision contained factual findings that were inappropriate in the context of a motion for summary judgment. Specifically, the court stated: "For instance, the [referee] found that the [plaintiff] could not perform the essential functions of her job in the face of the [plaintiff's] sworn assertion that she could and in the face of the fact that the [plaintiff] had already been performing her job from home for some time. Each of the issues of material fact noted by the court above have been either explicitly or implicitly decided against the [plaintiff] by the [referee] in arriving at her final decision. The [referee] appears not to have given any evidentiary weight to the [plaintiff's] affidavit/complaint, which is inappropriate in this summary judgment context." Accordingly, the court sustained the appeal and remanded the matter to the office for a hearing. Thereafter, Atos filed the present appeal.

On appeal, Atos claims that the Superior Court erred in sustaining the consolidated appeal. First, it argues

that the court erred in considering the plaintiff's affidavit as competent counter evidence to Atos' motion for summary judgment. The plaintiff responds that "[a]ffidavits are competent counter evidence that a nonmoving party may submit in opposition to a motion for summary judgment." We agree with the plaintiff.

We first set forth our standard of review. Our review of the question of whether the Superior Court considered properly the plaintiff's affidavit as competent evidence in opposition to the motion for summary judgment involves a question of law over which our review is plenary. See *Teodoro* v. *Bristol*, 184 Conn. App. 363, 374–75, 195 A.3d 1 (2018) (issue of whether excerpt from certified deposition transcript must be separately certified as such, apart from certification of original transcript from which it was excerpted, in order to make it admissible in support of or in opposition to motion for summary judgment is entitled to plenary review).

Atos argues that the Superior Court's determination that the plaintiff's affidavit, as a sworn statement, constitutes competent counter evidence in considering a motion for summary judgment is "devoid of any supporting authority and is counter to controlling case law." The only authority cited by Atos, however, discusses the role of the pleadings in framing the issues for summary judgment. See *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 621, 99 A.3d 1079 (2014) ("[t]he pleadings determine which facts are relevant and frame the issues for summary judgment proceedings or for trial"); *TD Bank, N.A.* v. *Salce*, 175 Conn. App. 757, 768–69, 169 A.3d 317 (2017) ("[I]t is not enough . . . merely to assert the existence of such a disputed issue . . . [instead] the genuine issue aspect requires the party to bring forward before trial evidentiary facts, or substantial evidence outside of the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred. . . . Mere statements of legal conclusions or that an issue of fact does exist are not sufficient to raise the issue." (Internal quotation marks omitted.)).

The affidavit of discriminatory practice filed by the plaintiff is unlike a civil complaint, in that it is sworn and in the form of an affidavit. Affidavits are properly considered pursuant to the rule of practice governing summary judgment motions, Practice Book § 17-49, which rule the referee expressly identified as governing her adjudication of Atos' motion. See Practice Book § 17-49 ("[t]he judgment sought shall be rendered forthwith if the pleadings, *affidavits* and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" (emphasis added)); see also Practice Book § 17-46 ("[s]upporting and opposing affidavits shall be made on personal knowledge, shall

set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"). Atos has provided this court with no authority prohibiting consideration, during summary judgment proceedings, of attestations contained in a signed and notarized affidavit of illegal discriminatory practice. Accordingly, we are not persuaded by Atos' claim.

In the alternative, Atos argues that, even if the attestations of the plaintiff properly were considered, they were insufficient to create genuine issues of material fact. Specifically, it contends that the plaintiff's affidavit "is conclusory, supported by nothing other than [the plaintiff's] rank speculation, and replete with irrelevant and unsupported allegations."

Before addressing whether the record reveals genuine issues of material fact, we turn to the interrelated argument of Atos that the Superior Court erred in failing to afford deference to the referee's decision. It argues that, "[i]n finding the complaint created genuine issues of material fact warranting denial of Atos' motion for summary judgment, the Superior Court failed to provide substantial deference to the [referee's] findings as to the impact of the complaint on the motion and merely substituted its own judgment for that of the [referee]." It contends that the Superior Court "strayed well beyond its 'strictly limited' and 'very restricted' role of simply determining whether the [referee] acted 'unreasonably, arbitrarily, illegally or in abuse of [her] discretion.' " We disagree with Atos' claim.

We first set forth our own standard of review. "Determining the appropriate standard of review is a question of law, and as a result, it is subject to plenary review." *Crews* v. *Crews*, 295 Conn. 153, 161, 989 A.2d 1060 (2010).

In rendering her decision, the referee cited the well established standard for summary judgment set forth in Practice Book § 17-49. "[Section] 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . .

"In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact . . . but rather to determine whether any such issues exist. . . . The courts hold the movant to a strict standard. To satisfy his burden the movant must make a

showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . Once the moving party has met its burden [of production] . . . the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . [I]t [is] incumbent [on] the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists. . . . The presence . . . of an alleged adverse claim is not sufficient to defeat a motion for summary judgment." (Citations omitted; internal quotation marks omitted.) *Episcopal Church in the Diocese of Connecticut* v. *Gauss*, 302 Conn. 408, 421–22, 28 A.3d 302 (2011), cert. denied, 567 U.S. 924, 132 S. Ct. 2773, 183 L. Ed. 2d 653 (2012).

Atos' contention is that the Superior Court was obligated to afford "considerable deference" to the referee's determination that there were no genuine issues of material fact. In making this argument, Atos relies on the substantial evidence rule governing judicial review of administrative fact-finding under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. It asserts that the referee had "a 'substantial basis of fact' on which to make her ruling" and cites *Rajasekhar* v. *Commission on Human Rights & Opportunities*, Superior Court, judicial district of New Britain, Docket No. CV-18-5024428-S (January 14, 2020), for the proposition that "[a] plaintiff who challenges an agency decision has the heavy burden of demonstrating that the department's *factual conclusion* lacks substantial support on the whole record." (Emphasis added; internal quotation marks omitted.) In contrast with the present summary judgment procedure, the factual findings in *Rajasekhar* were made by an investigator following a fact-finding hearing that involved sworn testimony from the plaintiff and three representatives of the plaintiff's former employer.[4] Id.

We are not persuaded by Atos' argument that the deferential standard employed to review administrative fact-finding extends to the determination of whether genuine issues of material fact existed in the summary judgment context. First, we note that, even with respect to judicial review of administrative agency actions, "[c]ases that present pure questions of law . . . invoke a broader standard of review than is . . . involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *Freedom of Information Commission*, 298 Conn. 703, 716, 6 A.3d 763 (2010). Second, with respect to summary judgment in general, "[i]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of

material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.) *Hospital of Central Connecticut* v. *Neurosurgical Associates, P.C.*, 139 Conn. App. 778, 783, 57 A.3d 794 (2012); see also *Teodoro* v. *Bristol*, supra, 184 Conn. App. 374 ("[t]he court's task in reviewing the parties' submissions is *not* to decide any factual issues they raise, but only to decide if, in fact, they raise any such factual issues, as by demonstrating a potential inconsistency or conflict in the admissible evidence concerning one or more facts upon which the movant's right to judgment depends" (emphasis in original)).

Finally, it is axiomatic that a reviewing court conducts a plenary review of the record, viewing the evidence in the light most favorable to the nonmoving party, to determine whether a genuine issue of material fact exists such that summary judgment was improperly rendered. See *Windsor Federal Savings & Loan Assn.* v. *Reliable Mechanical Contractors, LLC*, 175 Conn. App. 651, 660, 168 A.3d 586 (2017); *Rivera* v. *CR Summer Hill, Ltd. Partnership*, 170 Conn. App. 70, 76, 154 A.3d 55 (2017); *Mott* v. *Wal-Mart Stores East, LP*, 139 Conn. App. 618, 625, 57 A.3d 391 (2012). On the basis of the foregoing legal principles, we conclude that the deferential standard advocated by Atos does not apply to the present case and that the Superior Court properly conducted a plenary review of the record in considering whether genuine issues of material fact existed.

Having resolved the issue of the Superior Court's standard of review, we next consider Atos' argument that the Superior Court improperly determined that genuine issues of material fact exist with respect to the plaintiff's claims. In accordance with the standard of review previously set forth, we conduct a plenary review of the record. See *Rivera* v. *CR Summer Hill, Ltd. Partnership*, supra, 170 Conn. App. 76.

With respect to the plaintiff's discrimination and reasonable accommodation claims, the referee concluded that there were no genuine issues of material fact that the plaintiff was unable to perform the essential duties of her position and that a work from home accommodation was not reasonable. Specifically, the referee determined that Atos had made an affirmative evidentiary showing that there was no factual dispute that the plaintiff's essential job duties required her to be physically present at the Cheshire office.[5] Although Hamilton averred as much, the plaintiff averred that she had received the workplace accommodation of working from home and that she had, shortly before her employment was terminated, provided additional documentation, at Atos' request, in support of her *ongoing* work from home accommodation. The plaintiff further averred that she can perform the essential functions of the job. On appeal, Atos states that permitting the plaintiff to work from home permanently would be an

unreasonable accommodation. It states that it "should not be punished, for exceeding its legal obligations by *permitting* [*the plaintiff*] *to initially work from home in her new role*." (Emphasis added.) Thus, Atos appears to acknowledge that the plaintiff worked from home in her new role.

"When the evidence in a summary judgment record reasonably is susceptible to competing inferences, it is improper for a trial court, in ruling on the summary judgment motion, to choose among those inferences." *Doe* v. *West Hartford*, 328 Conn. 172, 197–98, 177 A.3d 1128 (2018). Faced with competing affidavits, the referee improperly credited the statements contained in Hamilton's affidavit. See id., 197 ("[w]hen deciding a summary judgment motion, a trial court may not resolve credibility questions raised by affidavits or deposition testimony submitted by the parties"). Thus, we agree with the Superior Court that genuine issues of material fact existed.

Moreover, we agree with the Superior Court that there exists a genuine issue of material fact with respect to the stated reasons for terminating the plaintiff's employment. The plaintiff averred that she was told that her employment was terminated due to a reorganization, while Hamilton averred that he terminated her employment because she could not perform the essential functions of the position. Rather than merely identifying the factual dispute raised by the competing affidavits, the referee improperly decided the factual question by crediting the statements made in Hamilton's affidavit. See id.

Additionally, we note that the record lends support to the plaintiff's argument that Atos "has proffered two different and contradictory explanations at different times to explain its termination decision." Atos contends in its appellate brief that "[i]t has never been alleged that [the plaintiff's] termination was because the service desk technician position was being eliminated." It argues that "[i]t was her prior managerial position that was eliminated." Our review of the record reveals that, in the plaintiff's affidavit, she averred that Atos terminated her employment on October 17, 2016. In its answer, Atos denied this averment as stated and alleged that, "[o]n or about October 17, 2016, [the plaintiff's] position was eliminated." The plaintiff further averred that Atos "told [her] that the termination was due to a 'reorganization' and that her 'job was no longer available.' " Notably, in its answer, Atos admitted this averment and further alleged that "[the plaintiff's] position was no longer needed in the [United States] due to offshore activity." Thus, Atos admitted having told the plaintiff that her termination was due to a reorganization and that her job was no longer available. In support of Atos' motion for summary judgment, however, Hamilton averred that he terminated the plaintiff's

employment because "she could not perform an essential function of her job—physically presenting for work and she conceded she could not perform her duties."

The Superior Court concluded that the foregoing issues, among others,[6] constituted "genuine issues of material fact that arise directly from the competing affidavits of the [plaintiff] and . . . Hamilton. These issues go to the very heart of the discrimination and retaliation claims. The [referee's] decision clearly contains factual findings by the [referee] that are not appropriate in the context of a motion for summary judgment." We agree with the Superior Court. Faced with competing averments on the issues of the essential functions of the job, reasonable accommodations, and the reason for the termination of the plaintiff's employment, the referee erred in determining that there were no genuine issues of material fact. Thus, summary judgment was not properly rendered.

Lastly, Atos argues that the Superior Court improperly "based its reversal on factual arguments neither party raised . . . ." Specifically, it argues that the plaintiff and the commission both objected to summary judgment with "purely procedural arguments" and "neither objection makes any reference whatsoever to the substance of [the plaintiff's] complaint nor do the objections set forth any allegedly disputed facts." We disagree that the court erred in determining whether genuine issues of material fact should have precluded summary judgment. Although the commission's objection focused exclusively on the referee's authority to render summary judgment, the plaintiff's objection included an argument that the early legal intervention decision to send the matter directly to a public hearing necessarily meant that there had been established the existence of genuine issues of material fact. Moreover, it is undisputed that the referee considered the substance of the plaintiff's affidavit in deciding the summary judgment motion. The referee expressly stated that she had "view[ed] the complaint and the submitted evidentiary materials in the light most favorable to the [plaintiff] . . . ." Accordingly, the Superior Court did not err in considering whether genuine issues of material fact existed.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In its memorandum of decision, the Superior Court stated: "Because the court finds that [Atos] has clearly not met its burden of establishing that no genuine issues of material fact exist and this finding is determinative of the appeal, the court has not decided the general issue of whether or not a [referee] in a public hearing context [before the commission] has the ability to grant a motion for summary judgment in any circumstance."

The commission's brief filed with this court is limited to arguing that "[t]his court should affirm the decision of the Superior Court on the alternat[ive] ground that the [referee] is not authorized to dispose of complaints at [a] public hearing through summary judgment." The commission states: "In doing so, the court need not reach the arguments raised by Atos on appeal, or otherwise address the merits of the summary judgment motion

itself."

The state of Connecticut has, pursuant to Practice Book § 67-7, filed an amicus curiae brief in the present matter arguing that the referee has the authority to grant motions for summary judgment as a means of disposing of meritless complaints at a public hearing. The state did not participate in oral argument.

We conclude that the Superior Court correctly sustained the appeal on the basis that the referee improperly rendered summary judgment because there existed genuine issues of material fact. Accordingly, we decline to reach the alternative ground for affirmance raised by the commission and need not address the argument contained in the state's amicus brief.

[2] Because Atos' claims are interrelated, we consider them together.

[3] Onderick averred that she assisted the plaintiff with multiple requests for FMLA leave and accommodations starting in 2015, and ending in late 2015. Onderick averred: "Specifically, in October, 2015, [the plaintiff] requested and was granted intermittent FMLA leave. . . . From October, 2015 through June, 2016, Atos granted intermittent leave to [the plaintiff] each time it was requested. . . . In June, 2016, [the plaintiff] requested approximately three months of continuous FMLA leave from June 13 through September 8, 2016. A true and correct copy of the record showing the request for continuous leave is attached as [e]xhibit 1. . . . However, based on her prior intermittent FMLA leave, [the plaintiff] was only eligible for FMLA leave through August 9, 2016. Yet, as an accommodation, Atos approved the entirety of the requested continuous leave through September 8, 2016, despite the fact that she was not eligible for it after August 9, 2016. . . . After her continuous FMLA leave from June 13 through September 8, 2016, [the plaintiff] requested another year of intermittent FMLA leave, this time requesting leave from September 20, 2016 through September 20, 2017. The request was denied due to lack of paperwork from her physician. A true and correct copy of the record showing the requested leave is attached as [e]xhibit 2. . . . She additionally asked to be permitted to work from home despite her physician advising that her only restriction was limited driving distances. A true and correct copy of the record showing that requested accommodation is attached as [e]xhibit 3. . . . After numerous communications between [the plaintiff] and Atos' human resources department, [the plaintiff] submitted revised physician paperwork on October 9, 2016, indicating a permanent [work from home] restriction. A true and correct copy of the record showing that requested accommodation is attached as [e]xhibit 4."

[4] Atos also cites *Barnes* v. *Premier Education Group, LP*, Superior Court, judicial district of New Britain, Docket No. CV-15-5016997-S (April 7, 2017). Unlike the present case, the decision in *Barnes* was rendered following a fact-finding conference during which both parties presented evidence, including witness testimony. Id.

[5] The referee also concluded that, "[b]y her own admission, the [plaintiff's] ability to perform her job duties was impaired as a result of her short-term memory loss due to the medications she was taking for bipolar disorder and anxiety." The only evidence the referee identified in support of this conclusion consisted of the July, 2016 text messages. We agree with the Superior Court that there existed a genuine issue of material fact in light of the plaintiff's sworn assertion that she could perform the essential functions of the job.

[6] We need not consider the other issues the Superior Court identified as genuine issues of material fact.

_____